**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-003374

MICHAEL WEISKIRCHER and CHERYL WEISKIRCHER,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. LL024CO0301198,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Michael and Cheryl Weiskircher, ("Weiskircher"), through counsel, Bradley A. Levin, Jeremy A. Sitcoff, and Elisabeth L. Owen of LEVIN SITCOFF PC, for their Complaint and Jury Demand against Defendant, Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. LL024CO0301198, state and allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs, Michael Weiskircher and Cheryl Weiskircher, were, at all times relevant, residents of Tarrant County, Texas.

2. At all times relevant, the Weiskirchers were the owners of a residence located at 295 Shenandoah Drive, Pagosa Springs, Archuleta County, Colorado (the "Property").

3. Upon information and belief, Defendant Certain Underwriters at Lloyd's, London ("Underwriters") Subscribing to Certificate No. LL024CO0301198 are business entities organized

and existing outside of the State of Colorado with their principal place of business located in London, England.

4. Upon information and belief Underwriters is authorized to transact business of insurance in the State of Colorado.

5. This lawsuit arises out of a homeowner's insurance claim made by the Weiskirchers under an insurance policy issued by Underwriters to insure the Property.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court because, among other things, this Complaint alleges causes of action arising out of an insurance claim insuring real property, which is located in this district.

**GENERAL ALLEGATIONS**

8. In 2004, the Weiskirchers purchased the Property as an investment and vacation home.

9. In 2012, Team Pagosa Property Specialists LLC ("Team Pagosa"), upon whom the Weiskirchers relied to maintain the Property, began marketing the Property for long-term rentals, which typically lasted one year or longer.

10. On or about August 1, 2015, pursuant to a lease agreement with Team Pagosa, a tenant named Justin Kerns moved into the Property.

11. On or about August 1, 2016, Team Pagosa renewed Mr. Kerns' lease agreement.

12. On or about May 25, 2017, the Weiskirchers' son, Jonathan Weiskircher, was in the area of the Property and drove by to check on it.

13. When he arrived at the Property, he discovered that it was in complete disarray and in poor condition. From his exterior view, he noted numerous serious problems including: the upstairs window glass was missing and the windows were wide open with curtains blowing through; there was trash everywhere outside (including metal scraps, tires, and cars without tires); make-shift alterations had been made to the garage; and it appeared illegal sewage was pouring out of one wall onto the open ground.

14. Due to his concerns about what he observed at the Property, Jonathan notified the Pagosa Police Department on the following day. That afternoon, Jonathan and Pagosa police officers went to the Property.

15. While at the Property, one of the officers was approached by an individual who told him he lived in the garage and that three other families lived on the Property. Reportedly, some ten or more people were living on the Property.

16. The Weiskirchers immediately sent an email to Team Pagosa advising of the newly discovered problems and stating that, as of May 26, 2017, the property management company was no longer authorized to go on the Property.

17. On May 31, 2017, the property management company was notified that its contract was terminated and that the tenant was to vacate the Property.

18. On June 2, 2017, the property manager contacted the Weiskirchers to advise that Mr. Kerns needed to remove the extensive debris that he had left outside the Property.

19. On June 3, 2017, the Weiskirchers sent an email to the property manager clarifying that Mr. Kerns was not permitted to enter the house but was only allowed to remove the exterior trash and debris.

20. At all relevant times, the Property was insured by Underwriters under Certificate No. LL024CO0301198 ("Policy").

21. After notifying their insurance agent of the loss, the Weiskirchers flew to Pagosa Springs on July 20, 2017, to personally assess the damage to the Property.

22. On July 21, 2017, the Weiskirchers met adjuster Joe Pace with Claims Consultants LLC, who upon information and belief had been hired by Underwriters or a representative of Underwriters to inspect the Property.

23. That inspection revealed substantial damage to the Property, including but not limited to:

- removal of most of the furniture and nearly all of the household furnishings;
- damage to the small amount of remaining furniture;
- damage to the walls;
- missing doors;
- damaged heaters;
- destroyed carpet;
- removal of small kitchen appliances, dishes, and equipment;
- severe damage to major kitchen appliances;
- a broken shower;
- a melted bathroom window;
- broken plumbing fixtures;
- broken bathroom cabinet doors;
- shower soap dish broken off from the wall, and mold behind it;
- a damaged toilet;
- mold and dirt throughout the house;
- removal of the Weiskirchers' personal belongings from locked storage areas;

- unauthorized and shoddy construction to reconfigure the property in order to create sub-units;
- addition of illegal and unsanitary plumbing to allow untreated sewage to flow outside the Property;
- unauthorized reconfiguration of the landscaping;
- damage to the deck and exterior; and
- trash and debris around the Property.

24. Notwithstanding the Weiskirchers' prior directive that no one enter the Property after their discovery of its state of disrepair, they found that someone had attempted to make superficial and cosmetic repairs to the Property, in particular to try to hide the damage previously caused.

25. By letter dated May 15, 2019, Underwriters, through counsel, advised that it was continuing to investigate the loss at the Property and requested that the Weiskirchers and their son, Jonathan Weiskircher, submit to examinations under oath.

26. On July 2, 2019, the Weiskirchers and their son, Jonathan Weiskircher, gave their examinations under oath in connection with the loss at the Property.

27. By letter dated November 1, 2019, Underwriters, through counsel, advised that because of questions surrounding whether the intentional loss exclusion in the Policy included subtenants, and the existence of questions of fact regarding the timing and cause of damage to personal property, damage to heating and plumbing system, and alleged theft of items from a locked storage area on the Property, as an "expression of good will" Underwriters had agreed to pay the sum of $5,695.20 to the Weiskirchers but that it was denying the claim in excess of that amount.

28. The Weiskirchers have cooperated with Underwriters' in its investigation of the loss at the Property.

29. Underwriters has refused to pay for all of the Weiskirchers' damage related to the loss at the Property.

## FIRST CLAIM FOR RELIEF
### (Breach of Insurance Contract)

30. The Weiskirchers reallege each and every allegation of their Complaint as if fully set forth herein.

31. The Policy constitutes a contract of insurance.

32. The Weiskirchers have duly performed or satisfied each and every condition of the Policy to be performed or has been excused from so performing as a result of Underwriters' material breach of its insurance contract.

33. Under the terms of the Policy, Underwriters has the obligation to perform a fair and reasonable investigation of covered losses at the Property and to timely pay all benefits due and owing for covered losses at the Property.

34. Based on its actions and inactions described above, Underwriters breached the Policy by, among other things, its failure and refusal to pay to the Weiskirchers all insurance benefits due and owing for damages caused the events at the Property.

35. As a direct and proximate result of Underwriters breach of its contractual duties, the Weiskirchers have suffered damages in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and C.R.S. § 10-3-1116)

36. The Weiskirchers reallege each and every allegation of their Complaint as if fully set forth herein.

37. Colorado Revised Statute sections 10-3-1115(1), (2) forbid an insurer from unreasonably denying or delaying payment of a claim for benefits owed to or on behalf of a first-party claimant.

38. The Weiskirchers are first-party claimants within the meaning of sections 10-3-1115(1), (2).

39. Underwriters delayed and/or denied the Weiskirchers' claim for benefits without a reasonable basis within the meaning of section 10-3-1115.

40. The Weiskirchers bring this claim to recover their reasonable attorney fees and court costs, and two times the covered benefit, pursuant to section 10-3-1116.

## THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

41. Plaintiffs reallege each and every allegation of its Complaint as if fully set forth herein.

42. The Policy is a contract between Underwriters and the Weiskirchers, and by its acts and omissions described above, Underwriters breached the contract by a course of conduct that deprived the Weiskirchers of their rights and benefits under the contract, which resulted in damages and injuries to them.

43. Underwriters' conduct was unreasonable and fell below the statutory and common law standards of care applicable to insurers in the State of Colorado pertaining to the investigation and handling of claims, violates the Policy's implied covenant of good faith and fair dealing, and constitutes the tort of bad faith breach of insurance contract.

44. Underwriters' actions were unreasonable and committed in disregard for its insureds' reasonable expectations.

45. Underwriters breached its duty of good faith and fair dealing by its actions, which include, without limitation, the following unreasonable acts:

    a. Depriving the Weiskirchers of the benefits and protections of the Policy;

    b. Failing to conduct an adequate investigation of the Weiskirchers' claim;

    c. Compelling the Weiskirchers to institute litigation to secure benefits under the Policy;

    d. Engaging in conduct prohibited by C.R.S. §§ 10-1-101, 10-3-1104(1)(h)(III), (1)(h)(IV), and 10-3-1113; and

    e. Other conduct to be revealed in discovery.

46. Underwriters knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.

47. Underwriters' bad faith breach of insurance contract has directly and proximately caused damages to the Weiskirchers, both economic and non-economic, including, without limitation, deprivation of policy benefits, emotional distress, mental anguish, frustration, aggravation, annoyance, inconvenience, and other damages and losses in amounts to be proved at trial.

...

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Michael and Cheryl Weiskircher respectfully pray for judgment against Defendant, Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. LL024CO0301198 upon their claims for relief asserted herein above, including and without limitation:

   a. For compensatory damages, both economic and non-economic, in amounts to be proved at trial;

   b. For all pre- and post-judgment interest permitted by law;

   c. For reasonable attorney's fees and court costs;

   d. For two times the covered benefit; and

   e. For such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 29th day of November 2019.

Respectfully submitted**,**

**LEVIN SITCOFF PC**

*s/ Jeremy A. Sitcoff*
Jeremy A. Sitcoff
Elisabeth L. Owen
1512 Larimer Street, Suite 650
Denver, Colorado 80202
Telephone: (303) 575-9390
Fax: (303) 575-9385
jas@levinsitcoff.com
elo@levinsitcoff.com
*Attorneys for Plaintiffs*